In the Matter of the Claim of STANLEY KOPEC, Claimant, against BUFFALO BRAKE BEAM-ACME STEEL & MALLEABLE IRON WORKS, Respondent. WORKMEN'S COMPENSATION BOARD, Appellant.

Argued January 23, 1952; decided April 17, 1952.

66

*Nathaniel L. Goldstein, Attorney-General (Gilbert M. Landy, Wendell P. Brown* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, appellant. Ample evidence supported the determination of the Workmen's Compensation Board that the accident and the injuries which claimant had sustained on February 12, 1943, reactivated and aggravated a pre-existing quiescent tuberculosis which caused him to be totally disabled. (*Matter of Altschuller* v. *Bressler,* 289 N. Y. 463; *Matter of Daus* v. *Gunderman & Sons,* 283 N. Y. 459; *Matter of Dawson* v. *Preston Pastry Shop,* 274 App. Div. 956; *Matter of Kolokotroni* v. *Oyster Bay Restaurant,* 277 App. Div. 822; *Matter of Steinberg* v. *Supreme Coat Makers, Inc.,* 271 App. Div. 762; *Matter of Webster* v. *St. Joseph Lead Co.,* 264 App. Div. 800; *Matter of Huffman* v. *Cast Traffic Sign Corp.,* 258 App. Div. 1013; *Matter of Salli* v. *Standard Wrecking & Salvage Co.,* 254 App. Div. 789; *Matter of Kaplan* v. *Kaplan Knitting Mills,* 248 N. Y. 10; *Matter of Plouff* v. *Port Henry Light, Heat & Power Co.,* 225 App. Div. 704, 250 N. Y. 616; *Matter of Ruso* v. *Beverwyck Breweries, Inc.,* 276 App. Div. 878.)

*William A. Kirk* and *Benedict T. Mangano* for respondent. Upon a review of the whole record there is no substantial evidence that claimant is totally disabled as a result of tuberculosis activated or aggravated by the accident of February 12, 1943. (*Matter of Rumsey Mfg. Corp.* [*Corsi*], 296 N. Y. 113; *Matter of Stork Restaurant* v. *Boland,* 282 N. Y. 256; *Universal Camera Corp.* v. *Labor Bd.,* 340 U. S. 474; *Labor Bd.* v. *Pittsburgh S. S. Co.,* 340 U. S. 498; *Matter of McCormack* v. *National City Bank,* 303 N. Y. 5.)

FULD, J. In February of 1950, the Workmen's Compensation Board awarded claimant compensation for total disability upon the hypothesis that a 1943 accident had activated a pre-existing quiescent tuberculosis. Upon appeal, the Appellate Division, concluding that there was no substantial evidence to support

the Board's finding that the disability resulted from the accident, reversed, and with that determination we agree.

The accident occurred on February 12, 1943, when the upper portion of a molding machine operated by claimant separated and flew off, striking him in the chest and chin, and fell on his left foot. Parts of two toes had to be amputated and his chest was bruised. A claim was filed with the Board for compensation for the injuries resulting from the accident, and that case was originally closed in January, 1944, with an award for 20% loss of use of the left foot. An examination of claimant's lungs, made in connection with the accident claim, revealed something wrong and he was advised to file a new claim for " an industrial occupational disease."

Numerous physicians examined claimant in connection with the new claim, and all testified that he was suffering from silicosis, which coexisted with a probable tuberculosis infection in the lungs. His exposure to silica dust, in his occupation as a molder, was considered by all — including claimant's witnesses, Dr. Nowak and Dr. Scott — to be the cause of the silicosis-tuberculosis condition. The referee, finding claimant to be totally disabled as a consequence of this ailment, rendered an award under old Article 4-A of the Workmen's Compensation Law dealing with silicosis and other dust diseases. The Board, however, on the carrier's appeal, in November, 1945, rescinded the determination on the ground that in " our considered judgment ", " claimant is not totally disabled because of the silicosis " — which, as the statute expressly provided, rendered the claim noncompensable under Article 4-A (Workmen's Compensation Law, § 66, repealed by L. 1947, ch. 431, § 14; similar provision embodied in present § 39). In so ruling, the Board went on to direct " that the record should be further developed as to whether the claimant had or has an active tuberculosis related to the accident."

On the remand, however, claimant, through his newly retained attorney, contended that the Board's decision did not preclude further consideration of the silicosis claim; regarding it as " absurd " to assert that claimant's illness was connected with the accident, his counsel urged that the issue of total or partial disability under Article 4-A should be settled, once and for all, by the Board's expert consultant. The referee

nevertheless ruled that the Board's decision authorized him to try only the single issue whether claimant's illness was related to the accident, and he proceeded to take testimony on that question.

For the carrier, Dr. Strohm and Dr. Donnelly, both chest specialists, declared that, in their opinion, the accident had no bearing upon claimant's tuberculosis infection, having neither caused nor in any way aggravated his condition.

Dr. Nowak, a general practitioner and claimant's personal physician, and Dr. Scott, an internist, were again called by claimant. Both had consistently, in their reports and their prior testimony before the Board, taken the position that claimant's silicosis and tuberculosis were occupationally caused, and Dr. Scott, at least, adhered to this diagnosis on the stand, concluding, in response to questioning by claimant's attorney, that " I think there was no direct causal relationship " between the accident and claimant's " present condition ". When pressed further as to whether the injuries suffered in the accident " would * * * tend to aggravate or activate a [pre-existing tubercular] condition rather than to have a beneficial effect upon the * * * condition ", he testified that " I can't make a direct statement as to that." Dr. Nowak also reasserted, in an early part of his testimony, the diagnosis that " the silicosis underlies the whole condition " — but, when the theory of a relationship between the accident and the claimant's illness was suggested to him on direct examination, he then, for the first time, stated that he believed that the accident did aggravate the tuberculosis.

Quite obviously, such inconsistent, variable testimony was not worthy of belief, and the referee in effect so concluded, holding that " there is no causal relationship [between accident and disability] and I so find." On appeal, the Board in December of 1946 rescinded all prior determinations and directed that an expert consultant render an opinion. Thereafter, Dr. Whipple, the Board's consultant on lung diseases, reported — and his report was concurred in by two other impartial physicians — that, while claimant was " totally " disabled from " silicosis with infection, probably tuberculosis ", such disability " is causally related to his occupation as a moulder. There is no evidence to associate his disability or

aggravation of his silicosis or infection as a result of alleged injury 2/12/43.''

Because of that expert panel's finding of total disability, the *silicosis* claim was relitigated.[1] The referee found that claimant was only partially disabled, and, accordingly, disallowed the claim. There followed a new appeal to the Board, on which claimant again contended that the evidence called for a finding of total disability. There was not the faintest suggestion of an intention to press the accident claim, counsel stating that '' the only question to be passed upon is that of the weight to be attached to the opinion of your own experts.'' Some time later, in March, 1948, the Board did rescind the referee's award, but — ignoring claimant's arguments and the testimony of the expert panel — placed its decision on the ground that '' the accident, superimposed upon a quiescent tuberculosis, activated such tubercular condition, causing it to progress to its present state and resulting in claimant's being permanently, totally disabled ''.

Despite the Board's ruling, the referee by whom the case was then heard rendered an award for total disability resulting from silicosis, and, most strangely, the Board confirmed that award. The employer thereupon appealed to the Appellate Division and, while that appeal was pending, the Board in February of 1950, declaring that the award did not reflect its prior rulings, modified its decision '' by finding accident '' and by adjusting the amount of the award to meet the changed basis of compensation. The carrier filed a new appeal, and, as earlier indicated, the Appellate Division reversed and set aside the award; the court, in addition, reinstated the Board's original 1944 decision awarding claimant compensation for 20% loss of his left foot and closing the case. (See 279 App. Div. 945.)

The question that we are called upon to decide is whether the Board's decision that there was a causal relationship between the accident of February 12, 1943, and claimant's tuber-

---

1. The claimant could not have recovered on such a basis. It had apparently been overlooked that the disability had not become total — as the law then required (Workmen's Compensation Law, former § 67, repealed by L. 1947, ch. 431, § 14) — '' within one year after the last injurious exposure '' in the employment; claimant had stopped working in May of 1944 and more than a year later, in November of 1945, the Board had, as noted above, found that he was but partially disabled.

cular condition is supported by substantial evidence. (See, e.g., *Matter of McCormack* v. *National City Bank,* 303 N. Y. 5; *Matter of Avon Bar & Grill* v. *O'Connell,* 301 N. Y. 150; *Matter of Tompkins* v. *Board of Regents,* 299 N. Y. 469; *Matter of Miller* v. *Kling,* 291 N. Y. 65; *Matter of Stork Restaurant* v. *Boland,* 282 N. Y. 256.) Whether or not, as the Appellate Division dissenting justices found, " there is a residuum of proof ", is beside the point, for we are here concerned, not with the " legal residuum " doctrine (see, e.g., *Matter of Carroll* v. *Knickerbocker Ice Co.,* 218 N. Y. 435; 1 Benjamin, Administrative Adjudication in the State of New York [1942], pp. 181 *et seq.*), but with the substantial evidence rule.

Under the test prescribed by our decisions for the judicial review of quasi-judicial determinations, the evidence supporting the findings of an administrative tribunal must be " viewed in the light of the record as a whole " (*Matter of McCormack* v. *National City Bank, supra,* 303 N. Y. 5, 9), since " Evidence which unexplained might be conclusive may lose all probative force when supplemented and explained by other testimony." (*Matter of Stork Restaurant* v. *Boland, supra,* 282 N. Y. 256, 274.) That principle in mind, the quasi-judicial determination is to be sustained if the reviewing court concludes that others might reasonably reach the same result.

This does not mean that the reviewing court will substitute its judgment for the considered judgment of the administrative tribunal. It does mean, however, that it will apply the only available objective test to determine whether the administrative tribunal did in truth exercise such considered judgment and that it will insist upon " ' such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' (*Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U. S. 197, 229.) " (*Matter of Stork Restaurant* v. *Boland, supra,* 282 N. Y. 256, 274.) As Benjamin expressed it in his work on Administrative Adjudication (*op. cit.,* pp. 336, 338–339), " The substantial evidence rule, providing as it does for a review of the rationality of a quasi-judicial determination on all the evidence that was before the administrative tribunal, is broad enough, and is capable of sufficient flexibility in its application, to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. * * * The interests of the parties require * * * that

quasi-judicial determinations of fact be subjected at least to the test of rationality which the substantial evidence rule provides, both because review of this scope affords a means of correcting abuses in individual cases and because the cautionary effect of the prospect of such review should help to assure proper administrative adjudication in the first instance. * * * Approaching the problem from the other side * * * review as broad as under the substantial evidence rule is entirely consistent with effective administration.''

Judged according to these criteria, the award under review cannot stand, for the evidence may not be said even to approach substantiality. Of the innumerable medical reports and voluminous testimony in the record before the Board, only one segment of the testimony of a single witness, Dr. Nowak, even suggested the existence of a causal connection between the accident of February 12, 1943, and claimant's tubercular condition. Supported solely by this dictum of a general practitioner, the Board rejected the unanimous findings of numerous chest and lung specialists, including those of the expert panel to which the Board itself had expressly referred the questions at issue. Indeed, although Dr. Nowak was well aware of the circumstances of the 1943 accident, neither in his testimony nor in his many reports did he ever hint that that accident had any bearing upon claimant's tuberculosis, adopting such a theory only after it had been suggested by claimant's attorney at the hearings. It is significant also that the referee who heard the testimony on this point found that claimant's illness was causally unrelated to the accident; that, when this finding was appealed, the Board did not reverse, but instead referred the case to its own expert consultants; and that, when those consultants rendered an opinion in accord with the finding of the referee, the Board nevertheless proceeded to find that a causal relation existed. Thus, the very history of the case before the administrative agency reinforces the conclusion that its decision lacked the support of substantial evidence.

The order of the Appellate Division should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FROESSEL, JJ., concur.

Order affirmed.