In the Matter of the Claim of ANTONIO KAZIA, Respondent, against WOODCREST CONSTRUCTION Co. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, November 12, 1953.

*Bernard Katzen, General Attorney, State Insurance Fund* (*Victor Fiddler* and *George J. Hayes* of counsel), for appellants.

*Nathaniel L. Goldstein, Attorney-General* (*Daniel Polansky* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Louis Block* for claimant-respondent.

*Per Curiam.* The question here presented is whether the claim is barred by section 67 of article 4-A of the Workmen's Compensation Law (L. 1936, ch. 887, as amd. by L. 1940, ch. 548), as it read prior to its repeal by chapter 431 of the Laws of 1947. Section 67 provided: " An employer shall be liable for the payments prescribed by this article for silicosis or other dust disease when disability of an employee resulting in loss of earnings shall be due to an employment in a hazardous occupation in which he was employed, and such disability results within one year after the last injurious exposure in such employment; or, in case of death resulting from such exposure, if such death occurs within five years following continuous disability from such disease. ''

The decedent was last employed by the appellant employers as a blasting foreman on January 10, 1940, and his last exposure occurred at that time. He was subsequently employed by another employer in blasting work for a period of a few weeks in March 1941, but the board found that there was no injurious exposure to silica dust on that job. Thereafter, during the remainder of 1941 and during the years 1942 to 1944, inclusive, the decedent worked at other jobs not involving exposure to silica dust. He became ill in November and December, 1944, but he continued at work. On February 14, 1945, he became totally disabled and was hospitalized. It was found that he was suffering from extensive pulmonary silicosis. He died on June 28, 1945. A medical report indicated that he had been suffering from silicosis since 1941 or 1942.

The death claim was barred under the quoted provision of section 67. Section 67 must be construed to mean that, in order to be compensable, death must occur within five years following continuous disability, which disability must have commenced within one year after the last injurious exposure. Otherwise the five-year limitation would be meaningless; there would be no point to a requirement that death occur within five years of the commencement of the disability if the time of such commencement of disability was not in any way tied in with the time of last employment or last injurious exposure.

This construction of the statute is supported by the statutory history. Silicosis was made compensable for the first time by chapter 254 of the Laws of 1935 by the addition of a new subdivision, numbered 28, to subdivision 2 of section 3 of the Workmen's Compensation Law, making " Any and all occupa-

tional diseases '' compensable. This brought silicosis within the general provisions of article 3 of the Workmen's Compensation Law governing occupational diseases. Under section 40 of article 3, as it then read, no compensation for disability or death resulting from any occupational disease was allowable (except in the case of continuous employment by the same employer), if disablement did not occur within twelve months of the contracting of the disease. It was found, however, that even with this limitation the statute imposed too great a burden upon industry and accordingly section 3 was amended again by chapter 887 of the Laws of 1936 and silicosis was excluded from the general occupational disease coverage and was made the subject of a new article, numbered article 4-A. This article was designed to ease the transition to full coverage of silicosis. It imposed various limitations upon the total compensation benefits payable; it specifically provided that '' Compensation shall not be payable for partial disability due to silicosis or other dust disease '' (§ 66) and it prescribed the time limitations quoted above (§ 67).

In 1947, the Legislature apparently concluded that a sufficient period of transition had elapsed and accordingly, by chapter 431 of the Laws of 1947, article 4-A was repealed and silicosis was once again brought within the general occupational disease coverage, subject however to a specific provision added to section 39, re-enacting the first sentence of former section 66, to the effect that no compensation should be payable for partial disability due to silicosis, and subject to certain other special provisions not relevant here. The time within which disability had to result was extended from one year to two years after the last injurious exposure and '' the present five year limitation in death cases '' was removed and compensation was allowed for death resulting '' at any time from such injurious exposure '' (see § 44-a and Governor's Memorandum on approving L. 1947, ch. 431).

In the light of this statutory history it is clear that, under the transitional statute applicable here, there was no liability for disability or death resulting from silicosis unless the disability commenced within one year after the last injurious exposure. The five-year limitation in death cases was an additional limitation barring compensation for death unless the death occurred within five years following the disability.

This rule may operate harshly or arbitrarily with respect to a particular claimant but it must be recognized that the rule was

the product of a legislative policy adopted in the general social interest, in order to mitigate the industrial burden of the newly imposed compensation liability for silicosis.

In this case the decedent suffered no disability within the meaning of the statute for a period of over one year after the last injurious exposure. Disability for the purpose of article 4-A meant total disability. There could be no recovery under that article if " the disability had not become total " within one year after the last injurious exposure (*Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works,* 304 N. Y. 65, at p. 70, footnote 1). It is undisputed here that the total disability of the decedent did not commence until February 14, 1945, more than five years after the last injurious exposure.

The decision in *Matter of Nigohosian* v. *Daub & Co.*, (275 App. Div. 463, motion for leave to appeal denied 300 N. Y. 762) did not turn upon the point which is crucial here. The disability in that case commenced during the course of the employment. The employee was totally disabled within one year after the last injurious exposure and his death occurred within five years after the expiration of the one-year period.

Insofar as it was held in *Matter of Tirelli* v. *Contractors for Dry Docks & J. Rich Steers, Inc.* (280 App. Div. 1004) that the occurrence of partial disability within one year after the last injurious exposure was sufficient to comply with section 67, that decision cannot stand in the face of the holding by the Court of Appeals in *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works* (*supra*).

The award should be reversed and the claim dismissed, without costs.

FOSTER, P. J., BERGAN, COON, HALPERN and IMRIE, JJ., concur.

Decision and award reversed and the claim dismissed, without costs. [See 283 App. Div. 677.]