In the Matter of the Claim of EDNA COLE, Respondent, against SARANAC LAKE GENERAL HOSPITAL et al., Appellants, and A. BARTON HEPBURN HOSPITAL et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, November 18, 1953.

*Fred J. Murray* for appellants.

*Clifford W. McCormick* for claimant-respondent.

*Nathaniel L. Goldstein, Attorney-General (Roy Wiedersum* and *Harry Pastor* of counsel), for Workmen's Compensation Board, respondent.

*Morgan F. Bisselle* and *Warren C. Tucker* for A. Barton Hepburn Hospital and another, respondents.

IMRIE, J.   Claimant was a general duty nurse at Saranac Lake General Hospital (herein referred to as Saranac General) from January 3, 1946, until November 1, 1946.  She remained unemployed until December 17, 1946, when she went to work in a similar capacity at A. Barton Hepburn Hospital (herein referred to as Hepburn) at Ogdensburg, where she had taken her training.   On January 13, 1948, an X-ray examination disclosed an active and progressive pulmonary tuberculosis infection, compelling her to stop work on January 14, 1948.  Soon thereafter she was admitted to Raybrook Sanatorium for bed rest.  The Workmen's Compensation Board has found claimant became disabled in August or September, 1947, within a period of twelve months after her employment at Saranac General ceased.  The board awarded her disability compensation, both total and partial, against Saranac General, by reason of such tuberculosis, as an occupational disease.  Hepburn and its carrier, Utica Mutual Insurance Company, were released from liability.

Saranac General and its insurance carrier, United States Fidelity and Guaranty Company, have 'appealed from the decision, asserting a lack of medical proof of relationship between employment at Saranac General and claimant's disease and challenging the power of the board to fix disablement at a date earlier than January 14, 1948, up to which date claimant worked at full wages.

Claimant and the superintendent of nurses at Saranac General testified that claimant was there exposed to and in contact with tubercular patients. There was testimony of claimant that she started coughing in August and September, 1947, and was raising blood-streaked sputum in October, 1947. Dr. Patton of Hepburn reported that she had a chronic cough for several months before leaving Hepburn (January 14, 1948), that several times he suggested that she have an X ray of the lungs but that she jokingly ascribed her condition to cigarettes, and that she had mentioned that she had blood-streaked sputum. Dr. Brumfiel, a specialist in diseases of the heart and lungs, and a physician on the Employee's Health Committee at Saranac General, examined claimant for Hepburn and its carrier Utica. He expressed the opinion that she contracted the disease prior to November 1, 1947, that she could have contracted it at Saranac General, and that he found nothing in the record to indicate that she contracted the disease at Hepburn, though he conceded such a possibility. The only evidence of contact with a tubercular patient at Hepburn concerned one Gebo, whose death certificate indicated that he died by reason of kidney infection, tuberculosis of bladder and rectum. Dr. Brumfiel testified that claimant could not have contracted the disease from Gebo.

The real issue here is raised by appellants' charge that the board has not complied with sections 37, 40 and 42 of the Workmen's Compensation Law in finding that claimant became disabled in August or September, 1947, whereas, as has been said, she worked at full wages until January 14, 1948.

Section 37 provides "Whenever used in this article: 1. ' Disability ' means the state of being disabled from earning full wages at the work at which the employee was last employed. 2. ' Disablement ' means the act of becoming so disabled as defined in subdivision one." Section 42, reads " For the purposes of this article the date of disablement shall be such date as the board may determine on the hearing on the claim." Section 40 reads, in part, " Neither the employee nor his dependents shall be entitled to compensation for disability or death resulting from disease unless the disease is due to the nature of his employment and contracted therein, or in a continuous employment similar to the one in which he was engaged at the time of his disablement, within the twelve months previous to the date of disablement, whether under one or more employers."

Sections 37 and 42 should be read together in the light of their history. By chapter 538 of the Laws of 1920, a new

article 2-A (now art. 3) was inserted in the Workmen's Compensation Law, containing present section 37 and section 44, which set out five methods for determining the date of disablement. Chapter 615 of the Laws of 1922 left section 37 as it was, but rewrote section 44 to substitute one method for determining such date and renumbered it as section 42. Such amendment provided that, as now, the board "may determine" the date of disablement. The use of the word "determine" connotes some latitude in the adjudication of an existing issue (Black's Law Dictionary), though the determination should not be arbitrary but founded on substantial evidence.

In appellants' view the earliest date of disability would be, of necessity, arbitrarily fixed by the employer's payroll record. Their emphasis on the provisions of section 37 is misplaced. What, may we ask, is the date which the board "may determine" in the light of the evidence before it? In such a case as this does the board "determine" that which is already settled beyond its alteration by the employer's payroll record, or may it "determine" that the evidence shows that there was some specific time when claimant's physical condition was so impaired that, were the condition evident, she would be deemed unable to earn full wages?

When the Legislature vested in the board alone the power and the duty to determine the date of disablement, it did so with an awareness of the facts of working life. An employee, unaware of the existence of an incapacitating disease or injury, may continue to work after some actual disability in order to earn full wages. Another, aware of the disabling condition, may work on under the compelling pressure of economic necessity. Yet another, knowing of a disability, may continue work under the drive of conscience or loyalty. The fact of continuing to receive full wages may be a presumption against a claimant, but it is a rebuttable presumption. In the instant case we may not doubt that, had claimant been examined when she was raising blood-streaked sputum, she would have been directed to stop work, both for her own physical well-being and for the well-being of her patients. She was then disabled even though she did not know it.

We do not suppose that section 37 was intended to impose "in a supposedly beneficent piece of legislation" a "fragment of irrational cruelty surpassing the most technical forfeitures of legal statutes of limitation." (Larson on Workmen's Compensation Law, § 78.42-b.)

The board's determination in respect to the date of disablement was in full accord with the views previously expressed by this court. In *Matter of Stephenson* v. *Suffolk Sanatorium* (276 App. Div. 1044), dealing with a case of pulmonary tuberculosis, it was said, "The fact that claimant, herself, was not conscious of the real nature of her condition is not controlling, and the board had the power to fix the date of disability in accordance with evidence which it found to be credible." In *Matter of Oddi* v. *Cabaret Hurricane* (278 App. Div. 261, 264) the late Justice Deyo wrote, "Despite the language of section 37 of the Workmen's Compensation Law, it would appear that in a case involving a schedule loss due to occupational disease, a claimant need not suffer an actual loss of time or wages to permit the board to fix the date of disablement. (*Matter of Slawinski* v. *Williams & Co.*, 298 N. Y. 546.)" In *Matter of Yuras* v. *Union Table & Spring Co.* (279 App. Div. 679) we find the following, "Appellants argue that because he lost no time, except part of a day, and no wages, that he did not become disabled within the meaning of section 37 of the Workmen's Compensation Law. If the application of this section is taken exclusively and construed literally appellants' argument is valid. The trend of authority however is the other way and towards a broad and liberal construction of the section in conjunction with the entire statute." In *Matter of Davis* v. *Dexter Folder Co.* (281 App. Div. 721) citing the *Yuras* case, this court said, "Because claimant was actually working at the time his claim was not vitiated."

The findings of the board as to claimant's contracting the disease at Saranac General but not at Hepburn and as to the date of disablement had support in the evidence, both medical and otherwise.

The decision and award should be affirmed, with costs to be divided equally between the Workmen's Compensation Board, on the one hand, and A. Barton Hepburn Hospital and Utica Mutual Insurance Company, on the other.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Decision and award affirmed, with costs to be divided equally between the Workmen's Compensation Board, on the one hand, and A. Barton Hepburn Hospital and Utica Mutual Insurance Company, on the other.