In the Matter of the Claim of THEODORE MIETLINSKI, Respondent, against EDWARD HICKMAN et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 28, 1954.

*John P. Cox* for appellants.

*Fordyce J. Hartman* for Caesar Szal and another.

*Nathaniel L. Goldstein, Attorney-General* (*Gilbert M. Landy* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

HALPERN, J. The facts out of which this compensation controversy arises are the following:

The claimant was, in the first instance, concededly employed by Szal Brothers, a partnership consisting of Caesar and Martin Szal, to work on a garage which the partnership was building on the appellant Hickman's farm, pursuant to an oral contract for the lump sum price of $2,875. The claimant, and one other workman employed by the Szals, were each paid $1.25 per hour or $10 per day for an eight-hour day. The Szals also worked on the job themselves. The garage contract provided for the construction of a concrete block garage similar to one which the

Szals had just completed for another customer. The Szals were responsible for the entire structure; in fact, they let a subcontract to another company for the doors of the garage.

When the garage was practically completed, except for the roof, Hickman asked one of the Szals to do the masonry work, including the walls, window sills and floor, of the first story of a two-story barn which he desired to build. The barn was to adjoin the garage and to share a common wall with it. Hickman had no blueprints for the proposed barn and had not yet decided the location and the exact dimensions of the windows and doors, so the Szals were not able to give him a lump sum price for the work. They agreed, however, to do the work of laying the concrete blocks for the walls at 25¢ per block, Hickman to pay the same price for the blocks themselves as that at which the Szals bought them from the block manufacturer. For the other work, laying the floor, etc., the Szals were to be paid at the rate of $2.25 per hour for every man-hour devoted to the job. The unit charge of 25¢ per block for laying the blocks was the same as that which the Szals had used in computing their bid on the garage job.

The claimant and his fellow worker were transferred by the Szals from the garage job to the barn job. There is some evidence in the record that Hickman told the Szals to hire the claimant to work on the barn but the evidence is clear that the claimant was already working for the Szals and the most that can be made of the testimony on this point is that, when the Szals objected to taking on the barn job on the ground that they would have to hire some men to help them do it, Hickman suggested that the Szals continue the employment of the claimant. There was no change in the rate of compensation of the claimant nor was there any change in his relationship to the Szals when he was transferred from the garage to the barn job. He continued to be paid in cash by the Szals at the end of each week at the rate of $1.25 per hour. This rate had been fixed by the Szals, without Hickman's authorization or direction.

Under the arrangement between the Szals and Hickman, the Szals retained for themselves the difference between the amount which they paid to the claimant and to his fellow employee and the amount which they charged to Hickman for the work at the unit prices. This constituted the Szals' profit on the job, including compensation for their own services. Hickman made no payment to the claimant or the other workmen for their services. He paid the Szals for the barn job by a single check in a lump sum.

The Szals undertook only the masonry work on the barn. The carpentry work was done by a building company under contract and other parts of the work were done by other building trade companies. It is undisputed that all these companies were independent contractors.

During the construction of the barn, on September 27, 1951, while the claimant was at work with Martin Szal, operating a power saw owned by the Szals, cutting strips of wood, a nail in a piece of wood hit the saw, causing the saw to jump and to cut the fingers of the claimant's right hand.

The claimant filed two workmen's compensation claims, one naming Hickman as the employer and the other naming Caesar Szal as the employer.

The Workmen's Compensation Board held in effect that Hickman was the employer and that the Szals and the claimant were his employees. It accordingly made an award in favor of the claimant against Hickman. From that award an appeal was taken to this court. We do not believe that the decision and award can be sustained upon the present record.

The respondent relies principally upon the claim that Hickman had undertaken such close supervision of the work that the Szals and their workmen became his direct employees. We do not believe that the evidence sustains this contention. Since Hickman had no blueprints of the barn and made decisions as to its construction features as the work went along, he naturally was in constant attendance on the job but the proof demonstrates that his directions related only to the results to be achieved and not to the manner and method of achieving them. The Szals were experienced masons; Hickman was a dairy farmer and, so far as the record shows, he had had no experience in masonry work. There was no such supervision by Hickman of the details of performance or such direction and control by him of the workmen on the job, as to make them his employees (*Matter of Beach* v. *Velzy*, 238 N. Y. 100).

The respondent also relies upon the fact that, at the hearings, the claimant referred to Caesar Szal as the " foreman ", but this was a characterization by the interested claimant in an obvious attempt to establish the validity of the claim. Caesar Szal also testified that he was only a " foreman " on the job but this too was a characterization by an interested person in an obvious effort to serve his own interests. The use of the conclusory term " foreman " cannot alter the undisputed facts as to the relationship between the parties nor can it control the decision of the underlying question of law (*Matter of Stone* v.

*Cohen Bros & Sons,* 282 App. Div. 900; *Matter of Craciola* v. *Lewis,* 233 App. Div. 437, 439).

It also appeared that Hickman had filed a notice of injury upon a printed form and he had filled in his name in the blank space calling for the name of the employer but this is not controlling as to the true relationship. He had to file a notice of some kind in order to protect himself against any possible claim for compensation (cf. Workmen's Compensation Law, § 110) and no other form of notice was provided by the compensation authorities. *Matter of Kleid* v. *Carr Bros.* (300 N. Y. 270), relied upon by the respondent, dealt with an admission by the employer that a claimant who was concededly employed by him had been engaged in the course of his work at the time of the accident, not with the establishment of the relationship of employer and employee. The question of whether, upon undisputed facts, the relationship is that of employer and employee or that of owner and contractor is a question of law and a conclusory statement by a layman on such a question is not entitled to substantial weight as an admission. (*Matter of Stone* v. *Cohen Bros. & Sons, supra; Matter of Craciola* v. *Lewis, supra.*)

The whole arrangement between Hickman and the Szals, particularly the provision for payment for the job at unit prices, which were substantially different from, and greater than, the rates paid by the Szals to the workmen, is incompatible with the claim that Hickman was the employer and the Szals and the workmen were his employees.

Hickman carried workmen's compensation insurance for his farm operations but, under the statute, the policy would cover any employees of his engaged in construction work on the farm as well (Workmen's Compensation Law, § 54; *Matter of Blenner* v. *Joseph Landis, Inc.,* 277 App. Div. 489, motion for leave to appeal denied, 302 N. Y. 947).

The Szals did not carry workmen's compensation insurance, although it appeared that they were regularly engaged in the contracting business. That they were guilty of a violation of law in not carrying compensation insurance is unquestionable. Perhaps it would be socially desirable to hold an owner liable for compensation to the employees of an uninsured contractor whom he had retained but the statute does not impose such liability. Section 56 of the Workmen's Compensation Law makes a general contractor liable for compensation to employees of his subcontractor, if the subcontractor does not comply with the insurance **requirements** of the law. But the section does not

apply to an owner of property who contracts with an independent contractor to do work on his own premises, except in the case of the owner of timberlands (*Matter of Dewhurst* v. *Simon,* 295 N. Y. 352). Whether the scope of the statute should be extended to cover the situation of an owner and an uninsured contractor is for the Legislature to decide. A strained construction of the facts ought not to be adopted as a means of holding the owner liable.

While the record is, at some points, confused and confusing, we think that the only factual conclusion which is reasonably sustainable upon the whole record is that the Szal Brothers partnership was an independent contractor and that the claimant was an employee of the partnership (cf. *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works,* 304 N. Y. 65).

The decision and award should be reversed and the matter remitted to the Workmen's Compensation Board for further inquiry and hearing.

FOSTER, P. J., BERGAN, IMRIE and ZELLER, JJ., concur.

Decision and award reversed and the matter remitted to the Workmen's Compensation Board for further inquiry and hearing, without costs.