■ In the Matter of 43 BAR & GRILL, INC., Petitioner, v. THOMAS F. RING et al., Constituting the State Liquor Authority, Respondents.— Proceeding pursuant to article 78 of the CPLR to review a determination of respondent dated April 29, 1971, which canceled the liquor license of petitioner. Determination confirmed and petition dismissed, without costs. No opinion. Munder, Acting P. J., Martuscello and Christ, JJ., concur; Shapiro, J., dissents and votes to annul the determination or at least to reduce the penalty to a 60-day suspension, with the following memorandum, in which Latham, J., concurs: This is an article 78 proceeding in which the petitioner seeks a reversal of an order of the State Liquor Authority dated April 29, 1971 which canceled its liquor

license, effective May 6, 1971, on a finding that it permitted a lewd and indecent performance to occur on the licensed premises. The case is the outcome of an arrest by officers of the Nassau County Police Department on June 17, 1970 of Eugene Moscola, secretary-treasurer of petitioner, Robert Regensburger, bartender at the licensed premises, and Helene Wood, a dancer who had been performing there that night, for violation of the Penal Law following an alleged lewd performance. That charge has not yet been tried. On August 22, 1970 the State Liquor Authority initiated a proceeding to revoke petitioner's license. Ultimately that proceeding eventuated in the issuance by the Authority of the order of revocation of April 29, 1971. The testimony which was the basis for that order need not be set forth at length. It appears that there were five policemen at petitioner's bar on June 17, 1970 — the date of the alleged obscene performance — although only two were called as witnesses. Not called was the police officer who, according to the two testifying police witnesses, had taken written notes of what occurred; nor were the notes produced. The testimony of both officers was that they came to petitioner's licensed premises with the other three officers, all in plainclothes, at about midnight on June 16 and remained there until about 3:30 A.M. on the 17th; that about one-half hour after they entered the bar they were asked by Moscola if they would be staying until 2:30 A.M. and were told by him that at that time the topless dancer then performing would " drop her drawers ", when it was expected that all the patrons would pay an extra dollar. At about the stated hour, according to them, Moscola approached the dancer and spoke to her and she left and returned without her mesh stockings and then removed her bikini, leaving her nude. She danced in this state for some 15 to 20 minutes, going down on her haunches with her vagina within a foot of the patrons. Before this dance, Moscola collected one dollar from each of the officers and placed it on the bandstand. Following this performance one of the police officers who testified said he called his supervisor and was advised to make arrests, which he did at about 3:00 A.M. *One of the officers admitted that during the course of the night, and before the alleged indecent performance,* Moscola asked him if two of his companions were cops. The two police witnesses testified that one had had four beers while on the premises and the other had four whiskeys and ginger. Both denied that any of police officers present were loud and boisterous. Petitioner's witnesses, in addition to the three arrested, were five patrons who were present at the licensed premises on the night in question. They testified Wood had not danced nude or in a lewd manner at any time that night, that the five police were boisterous and were yelling " take it off " at the dancer. All five patrons said that Moscola knew that the five men were vice cops and had told them so. They also corroborated Moscola's testimony that the collection he took up was solely to get Wood, the topless dancer, to stay and dance past her normal quitting time of 2:00 A.M. Moscola and Regensburger also testified the police had from 8 to 16 drinks each and were drunk and boisterous. Moscola stated he knew the arresting officers were police officers as they had previously visited his establishment. The dancer, Wood, testified she wore a brown G-string all the time she danced and that the collection was taken to pay her to dance after her usual quitting time. I do not believe that the substantial evidence rule requires us to confirm the State Liquor Authority's determination. That rule does not require an appellate court to exercise a mere perfunctory, passive function (*Matter of Emerman* v. *Nathan,* 34 A D 2d 282, 287). Substantial evidence has properly been held to mean, in the last analysis, " evidence which is entitled to carry conviction " (*Matter of Di Nardo* v. *Monaghan,* 282 App. Div. 5, 7). There must be a rational basis for the determination (*Matter of Barton Trucking Corp.* v. *O'Connell,* 7 N Y

2d 299, 314). Here, the testimony of the three persons arrested was supported by the testimony of five disinterested witnesses. The mere fact that two police officers testified to the contrary, and corroborated each other, does not automatically require a holding that the determination was supported by substantial evidence (see, e.g., *Matter of La Forge* v. *Kennedy*, 7 N Y 2d 973, revg. 8 A D 2d 143; *Matter of Halloran* v. *Kirwan*, 28 N Y 2d 689). A review of the evidence, in my opinion, compels the conclusion that the determination was not supported by substantial evidence and that the evidence would not lead a reasonable man to the conclusion that a lewd performance had taken place. By the admission of the officers, Moscola knew, or at the very least believed, they were police officers. Is it reasonable to believe that, knowing the five so-called patrons to be police officers, Moscola would have permitted an indecent performance to go on, knowing that his license would be jeopardized thereby? The question answers itself. Furthermore, we should consider the failure to call the three other officers who had been present, as witnesses, particularly the one who had allegedly taken notes of the performance (cf. *Matter of Di Nardo* v. *Monaghan, supra*; see, also, *Rice* v. *Ninacs*, 34 A D 2d 388; *Laffin* v. *Ryan*, 4 A D 2d 21; *Milio* v. *Railway Motor Trucking Co.*, 257 App. Div. 640). The evidence taken as a whole, considered in the light of what was not presented, reveals that the testimony of the officers was unworthy of belief. As the Court of Appeals noted (*Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works*, 304 N. Y. 65, 71) in quoting 1 Benjamin, Administrative Adjudication in the State of New York [1942] [pp. 336, 338–339]) : " The substantial evidence rule, providing as it does for a review of the rationality of a quasi-judicial determination on all the evidence that was before the administrative tribunal, is broad enough, and is capable of sufficient flexibility in its application, to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication." In this connection it may be observed that with the use of a mini-camera, concealed on the person of any one of the police officers, a photographic record could have been made of the performance which would obviate any question of what was portrayed by the dancer. In light of the fact that $17\frac{1}{2}$ hours of police time were spent by the five police officers waiting for the performance — during which time they were more or less freely imbibing — a picture thus taken would have spoken more loudly and eloquently than the two police officers who testified and the three who did not. I am also of the view that the penalty imposed of license revocation was excessive. The Court of Appeals has held that a reviewing court may impose a lesser penalty where it believes that the punishment assessed by the administrative agency is excessive (*Matter of Mitthauer* v. *Patterson*, 8 N Y 2d 37). In that case the Court of Appeals upheld an Appellate Division ruling that a penalty of dismissal of a Transit Authority ticket agent who had collected fares from passengers and kept them herself was excessive, reducing it to a suspension of six months. In so doing, the Court of Appeals noted that the employee had over 20 years of service with a good record and would lose many valuable rights if dismissed. The Court of Appeals, in the same case, specifically ruled that a reviewing court is authorized under subdivision 5-a of section 1296 of the Civil Practice Act, now CPLR 7803 (subd. 3), to " order a lesser discipline, much as it does in criminal cases " (id., p. 42). Here, the undisputed testimony is that Moscola, the principal of the petitioner corporation, had previously been licensed by the State of New York as a real estate broker, insurance broker and insurance adjuster and was a previous license holder under the Alcoholic Beverage Control Law. In an effort to avoid this unblemished record respondent State Liquor Authority in its brief contends that in imposing

the measure of penalty involved in its determination the members of the Authority considered petitioner's past record as a licensee for law observance. That alleged past bad record consisted of a letter of warning, dated January 9, 1969, alleging a violation of section 101-aa of the Alcoholic Beverage Control Law because, while on the Delinquent List, petitioner had tendered checks for $74.52 to a wine and spirit company and for $44.85 to a beer company which were not honored on presentment for payment. This malefaction fails to mar Moscola's record or to impair his reputation as a law abiding citizen up to the time of his involvement in the affair of the topless and allegedly bottomless dancer. The penalty assessed on petitioner fails also to take into account the changing nature of our standards on such matters as nudity in public performances. Society is presently apparently more tolerant of behavior involving display of parts of the human body than it once was. Many of our present day films are rampant with unabashed displays of the entire human body, deviant sexual behavior, and the use of four-letter words. Nudity in the theater is commonplace and permitted and language in Broadway plays once considered coarse and demeaning, if not insulting, appeals to more than the prurient, as witness the success of such plays as "Hair" and "Oh Calcutta". The courts may not close their eyes to this change in attitude toward nude displays and what had previously been considered, perhaps rightly so, crude vulgarity. The measure of punishment for such behavior should take into account the present moral standards of the community. In view of all the circumstances in this case, I believe that the punishment imposed is excessive and unduly disproportionate to the offense, that a suspension of 60 days would have been more appropriate and that therefore the penalty should be reduced accordingly (*Matter of Show Boat of New Lebanon* v. *State Liq. Auth.*, 33 A D 2d 954; *Matter of 103 Rest.* v. *State Liq. Auth.*, 32 A D 2d 542; *Matter of Sayville Coachman Inn* v. *New York State Liq. Auth.*, 30 A D 2d 974). As the court said in *Matter of Papoutsis* v. *State Liq. Auth.* (32 A D 2d 284, 286) : " Although in no way condoning the deed, we do not think the heavens will fall or society be any the worse if the petitioner is restored to his business after a suitable period wherein his license is suspended as a chastening reparation for his offense. We regard a reasonable period of suspension as condign satisfaction and more proportionate to the offense. The power to so act is free from doubt." I would therefore annul the determination appealed from and grant the application, or at the very least, I would modify the determination by providing for a 60-day suspension of the license instead of its cancellation.