OPINION OF THE COURT
Edward M. Horey, J.
The petitioner, Gaylord Burnell, a prisoner at the Attica Correctional Facility, initiated this habeas corpus proceeding to attack the procedure and determination that attended a superintendent’s hearing held on September 8, 1983, referable to alleged breaches of the prison’s discipline code by the petitioner.
While several matters were urged, this court has found merit in only one, viz., the alleged impropriety of the hearing officer’s determination that the inmate petitioner could not be present at the hearing when witness sought by him gave testimony.
The record is clear that the hearing officer did refuse to permit the petitioner to be present when a witness called by the petitioner gave testimony. The reason for the refusal was stated as follows: “Inmate is confined to S.H.U. It is not in the best interest of the safety and security of this area to have the witness interviewed in your presence.”
*343 The court notes in passing that petitioner’s attorney urged on oral arguments that there was nothing of substance to the reason stated. It was stated that in nearly all instances when there has been a determination of a violation of discipline, that the violator is immediately imprisoned in the so-called special housing unit. It was further stated that the reason for refusal to interview witnesses in this area is simply one of inconvenience for prison officials and that it has no relationship whatsoever to institutional safety or correctional goals. In support of his arguments, petitioner’s attorney noted that in fact the special housing unit was the safest and most protected area in the entire prison. No evidence in support of the arguments advanced by petitioner’s attorney was offered or received. Petitioner’s attorney stressed the absence of any stated reason to support the refusal.
The record reflects that the Assistant Attorney-General appearing in opposition neither disputed nor affirmed the oral arguments of petitioner’s counsel. Rather he confined his arguments to the provisions of the regulation applicable to inmate’s attendance at superintendent’s hearing and urged that the refusal of the hearing officer to permit the inmate’s attendance was one for the decision of the hearing officer under the applicable rules and regulations governing the conduct of superintendent’s hearing held for alleged breaches of conduct.
The applicable regulation found in the rules and regulations, adopted by the Commissioner of Correctional Services (7 NYCRR 254.5), contains two subdivisions. 7 NYCRR 254.5 (a) contains provisions which permit an inmate to call witnesses on his behalf. 7 NYCRR 254.5 (b) relates to the procedure to be followed if such witnesses are called. It provides in relevant part as follows: “(b) any witness shall be allowed to testify at the hearing in the presence of the inmate unless the hearing officer determines that so doing will jeopardize institutional safety or correctional goals.”
It appears that the issue raised in this proceeding has been raised in at least three prior proceedings before three different Supreme Court Justices. There is no consistency in those determinations.
*344 In Matter of Rodriguez v Smith (index No. 11,929), in an unpublished memorandum decision, Justice William J. Flynn, Jr., treated the issue as one raising a constitutional question of procedural due process. He held that an inmate did not have a constitutional right to be present at the hearing when the inmate’s witness testified. He further held that “due process does not even require that the reasons for refusing to call a witness requested by an inmate be specifically stated on the record.”
In Matter of Boswell v Smith (index No. 11,441), in an unpublished memorandum, Acting Supreme Court Justice Charles Newman reached a contrary result to that of Justice Flynn. While not specifically stated to be such, the inference is that Justice Newman rested his determination on constitutional due process and found a violation of such process in the failure of the hearing officer to permit an inmate’s attendance without giving a specific reason as to why the presence of the inmate was a threat to security. Justice Newman stated specifically that “the location of a hearing may not be used as an excuse to bar the presence of all inmates requested as witnesses.”
In Matter of Owens v Smith (index No. 11,876), Justice Thomas P. Flaherty in a brief unpublished memorandum reached a determination similar to that of Justice Newman in that the petitioner’s appeal was upheld. For his reasons Justice Flaherty stated: “The reasons given by the Hearing Officer denying the inmate’s request to have a third witness interviewed and further denying the inmate the right to be present during those interviews were self-serving and inadequate.”
In the opinion of this Judge, the resolution of the issue common to all of the three cited actions as well as the one here for decision does not require a determination of compliance or noncompliance with constitutional due process in the first instance.
When there is a statutory right in regard to a matter that is not within the guarantee of the Constitution, the statute is the sole ground for enforcement of the right. This is not to say that this existence of a statutory right excludes a constitutional right. It does not. (1 NY Jur, Administrative Law, § 127, p 488; Sharkey v Thurston, 268 *345 NY 123,127.) However, it is to say that the statutory right that has been accorded an inmate here in issue should be tested first by and under the statutory enactment that gives rise to the right. A review of constitutional limitations should abide that review.
In exercising the authority which the Legislature delegated to him, the Commissioner of Correctional Services adopted and promulgated a regulation which first provided that an inmate could be present when a witness, called on his behalf, was allowed to testify at a “Superintendent’s Hearing” conducted by a “hearing officer” (see 7 NYCRR 254.5). This right, granted by the commissioner, was general and unlimited except in one instance, to wit: “unless the hearing officer determines that so doing will jeopardize institutional safety or correctional goals.” (7 NYCRR 254.5 [b].)
Two facets of the exception are noted. First, to deny the presence of the inmate, the hearing officer must make a determination of a factual issue. Secondly, the factual issue to be determined is the existence of jeopardy either to institutional safety or correctional goals.
The court looks first to the word “will” as used in the phrase “will jeopardize institutional safety or correctional goals.” As used in the regulation, the word “will” is defined as “[a]n auxiliary verb commonly having the mandatory sense of‘shall’ or ‘must’ * * * It is a word of certainty, while the word ‘may’ is one of speculation and uncertainty.” (Black’s Law Dictionary [4th ed], p 1771, and cases there cited.)
The negative aspects of the exception are important. The exception is not that the inmate’s attendance “might” or “may” or “possibly could” jeopardize institutional safety or correctional goals. There is a positive requirement.
The meaning then to be ascribed to the quoted phrase “will jeopardize institutional safety or correctional goals” is that there must be a determination by the hearing officer that there exist facts and circumstances that lead to the conclusion that jeopardy to institutional safety or correctional goals is certain to occur if the inmate is present. The essence of the requirement is the certainty of existing jeopardy.
*346 The court looks next to the word “determine” as used in the exception “unless the hearing officer determines that so doing will jeopardize institutional safety or correctional goals.” (7 NYCRR 254.5 [b].)
It has been held that “determine” means to resolve, to adjudge, to ascertain or settle definitely or permanently, to put to an end controversy by deciding issue and to bring to conclusion, to settle by authoritative or judicial sentence, to perform judicial act (Matter of Le Tarte v Board of Educ., 65 Misc 2d 147,149; to same effect see Matter of Talbot, 170 Misc 138, 143).
In Matter of Cole v Saranac Lake Gen. Hosp. (282 App Div 626, 629), the court in defining “determine” stated that while the word connoted some latitude in adjudication, the determination nonetheless “should not be arbitrary but [should be] founded on substantial evidence.”
In a determination as long ago as 1916, our Court of Appeals laid down a rule applicable to administrative agencies. It has become known as the “legal residuum” rule. Under this rule, even though an administrative agency is not bound by the rules of evidence applicable in court, and even though the agency may in its discretion accept any evidence that is offered, still, in the end, there must be a residuum of legal evidence to support the finding of the administrative agency. (See Matter of Carroll v Knickerbocker Ice Co., 218 NY 435, 440.)
Some question of the continuance of the “residuum of evidence rule” was later made by our Court of Appeals in Matter of Kopec v Buffalo Brake Beam-Acme Steel & Malleable Iron Works, 304 NY 65, 71) when the court stated that there it was not concerned with that rule, but rather with the substantial evidence rule. In Matter of Kopec (supra), our highest court postulated that in considering whether or not an administrative tribunal exercised considered judgment, it would “insist upon ‘such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’ (Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229.)” (p 71; italics added.) The court then stated that application of the substantial evidence rule would meet the stated requirement for review of administrative adjudications.
*347 In the instant case, there is no need to attempt to resolve the niceties of distinction between the “residuum of evidence rule” and the “substantial evidence rule”, nor whether the stated requirement of our Court of Appeals is met by application of either or both such tests. This is for the reason that all courts in all jurisdictions appear to require some evidence of some character to support a judicial or quasi-judicial administrative determination. (See 2 Am Jur 2d, Administrative Law, §§ 691, 452, and the legion of cases there cited.)
In summary this court concludes that the word “determine” as used in rule 7 NYCRR 254.5 (b) means to adjudicate on some evidence.
When considered with the factual matter which is required to be adjudicated, the exception to the mandated attendance of the inmate contained in 7 NYCRR 254.5 (b) requires a factual determination by the hearing officer that there exists certainty of jeopardy to institutional safety or correctional goals if the inmate is permitted to attend the hearing when a witness testifies; and such determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support that determination.
Applying this determined meaning to the facts in the case at bar, this court concludes that there exists a woeful failure to meet the statutory requirements. A search of the entire record discloses no evidence to support the hearing officer’s determination. All that exists is the bare statement that this inmate’s attendance would jeopardize institutional safety or correctional goals. This is nothing more nor less than a mouthing of the provisions of the exception to the right of the inmate to attend the hearing. It is inadequate.
In predicating the decision here on a construction of the regulation rather than on constitutional grounds, the court notes that the “right” of an inmate’s attendance at a disciplinary hearing has twice been addressed by the Supreme Court of the United States.
In Wolff v McDonnell (418 US 539, 566), pointing out that there might exist instances where attendance of an *348 inmate might create a risk of reprisal or undermine authority, the Supreme Court refused to posit a rule that an inmate had a constitutional right to be present at all disciplinary hearings.
Stating that some modicum of flexibility and accommodation might be required in some instances, the court nonetheless concluded: “Although we do not prescribe it, it would be useful for the Committee to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case” (p 566).
Later in Baxter v Palmigiano (425 US 308, 322), the Supreme Court referred to its decision in Wolff v McDonnell (supra) and said of it: “Within the reasonable limitations necessary in the prison disciplinary context, we suggested, but did not require, that the disciplinary committee ‘state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards present in individual cases’ ” (p 321).
The court pointed out its continuing affirmation of the requirement for inmates presence at disciplinary hearings. It distinguishes its views on this score from the right of confrontation and cross-examination: “We characterized as ‘useful,’ but did not require, written reasons for denying inmates the limited right to call witnesses in their defense. We made no such suggestion with respect to confrontation and cross-examination which, as was there pointed out, stand on a different footing because of their inherent danger and the availability of adequate bases of decision without them” (p 322).
Clearly the rules which are in issue in the action at bar were adopted by the Commissioner of Correctional Services after the decisions in Wolff v McDonnell (supra) and Baxter v Palmigiano (supra). Since the language of the exception to the right of an inmate’s attendance at a hearing is the precise language used by the Supreme Court, the court assumes that the decisions and exceptions were present in mind when regulation 7 NYCRR 254.5 (b) was adopted.
*349 This court finds nothing in the adopted regulation in issue that indicates a rejection or attempted rejection of the twice repeated suggestion of the Supreme Court that inmates be permitted to be present at hearings or, if refused, that reasons for refusal be stated in writing. In the opinion of this court, regulation 7 NYCRR 254.5 (b) was adopted to fully implement and comply with the suggested requirement of the Supreme Court as well as the bare decision of that court as to the “right” of an inmate to attend. So viewed, the decision reached here is in harmony with constitutional provisions and suggested practice. The only discord is found in the failure of the hearing officer to implement the regulation as this court is satisfied it not only provides, but was intended to provide.
The appeal from determination of the superintendent’s hearing of September 7, 1983, is sustained in favor of the inmate petitioner, Gaylord Burnell. Accordingly, it is ordered that any reference to such proceeding, the underlying reports of misbehavior, the proceedings leading to a determination, and the determination are all to be expunged from the institutional records. It is further ordered that the petitioner receive credit for all “good time” lost as a consequence of the decision reached at the superintendent’s hearing. Finally, it is ordered that if the inmate continues to be confined in the special housing unit as a consequence of the determination made at the superintendent’s hearing, that he be released immediately.