In the Matter of the Claim of MAXWELL NEWTON, Respondent, against COUNTY OF ERIE, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 2, 1958.

*Frank C. Roberts* and *Emil L. Cohen* for appellant.

*Maxwell Newton,* claimant-respondent in person.

*Louis J. Lefkowitz, Attorney-General (Daniel Polansky* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

HERLIHY, J. Claimant, 63 years of age, on January 23, 1956 was the head keeper at the Erie County Penitentiary and has been similarly employed by the same employer for approximately 30 years. While walking in one of the corridors of the institution with a person on each side of him he "went down and that's all ". In his claim for compensation he stated with reference to the happening of the accident " Walking in corridor

and my knee gave out, and I could not step on it." He further described the happening as follows:

"Q. And all at once what happened? A. My leg went down and I went down. They grabbed me as I hit the floor.

Q. Left leg was it? A. Left leg.

Q. Well, did you have a pain or something? A. Before that, no, no, nothing.

Q. All you know is that your left leg gave way? A. That's right. That's right.

Q. Did you fall? A. I went down. They caught me. I was right between them.

Q. So you were falling and these two men held you up, caught you, right? A. That's right. * * *

Q. Did you ever have any trouble with that leg before? A. Never, never.

Q. Well, what do you think happened? What's your explanation? A. I have none. I have none. What explanation could you have? You are walking along.

Q. I'm just trying to get your impression. A. I have none.

Q. Did you step on anything? A. Not to my knowledge, no. I don't think so.

Q. Was the floor even? A. Oh, yes. Yes. Good floor.

Q. And you weren't carrying anything? A. Nothing."

Dr. Marks testified for the claimant and his testimony is well summed up in the following:

"Q. In other words, you do not have any opinion as to whether or not his employment had anything to do with his condition? A. I feel that it did have something to do with it.

Q. Will you tell us why? A. Well, this was as far as I could determine something which —, Well, let me see. I feel that this is something that has come on over the course of some years and most of his employment has been on his feet.

Q. I see. In other words, on an occupational basis over a long period of time. Well, suppose he had been at home when this condition took place, would it have made any difference? A. I would probably feel that his work had contributed to it."

Dr. Kaiser testified for the claimant as follows:

"Q. Now doctor, you have heard the claimant testify and you have heard Dr. Marks testify. Do you have an opinion with a reasonable degree of medical certainty as to whether his employment contributed to this condition? A. I do indeed.

Q. And what is your opinion? My opinion is that Mr. Newton's work is such that it cannot be considered ordinary walking, and this man for many, many years has traumatized his knee joint. I think that on the day described his knee

joint did give out in the same sense that a joint can suddenly stop functioning. I think that if Mr. Newton had been doing other kinds of work that he wouldn't be in this fix. If Mr. Newton had a sedentary job with reasonable medical certainty I don't think that Mr. Newton would have his kneecap out. We went into this with Dr. Marks, and it was on the basis of that information that I came to this conclusion."

With reference to an accident, the board found as follows: " As a natural and unavoidable result of the aforesaid work activities, Maxwell Newton suffered a series of traumas to his knee and sustained accidental injuries in the nature of traumatic arthritis which arose out of and in the course of his employment and caused him to be disabled."

There is no evidence in the record to sustain such a finding of accidental injuries.

With reference to an occupational disease, the board made the following finding: " The traumatic arthritis which caused Maxwell Newton to be disabled was an occupational disease resulting from the nature and conditions of his employment to which all employees of his class were subject, which was not brought about by the failure of his employer to furnish a safe place to work, which produced the disease as a natural incident of his occupation and attached thereto a hazard distinguishing it from the usual run of occupations and in excess of the hazard attending employment in general."

In *Matter of Detenbeck* v. *General Motors Corp.* (309 N. Y. 558) concerning " occupational disease ", the court said at pages 560–561: " 'An ailment does not become an occupational disease simply because it is contracted on the employer's premises. It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort. As this court observed in *Matter of Goldberg* v. *954 Marcy Corp.* (276 N. Y. 313, 318–319), an occupational disease is one " which results from the nature of the employment, and by nature is meant * * * conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general." ' "

In *Matter of Riehl* v. *Town of Amherst* (308 N. Y. 212) the court said with reference to medical testimony at page 216:

"The conclusion contained in * * * .certificates of death has no greater probative force than the basis on which his testimony shows that it is founded. Expert opinion evidence lacks probative force where the conclusions are 'contingent, speculative, or merely possible'''.

The responsibility of a reviewing court in matters of this kind has been aptly stated in *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works* (304 N. Y. 65) at page 71: "It does mean, however, that it will apply the only available objective test to determine whether the administrative tribunal did in truth exercise such considered judgment and that it will insist upon ' " such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." * * *.' 'The substantial evidence rule, providing as it does for a review of the rationality of a quasi-judicial determination on all the evidence that was before the administrative tribunal, is broad enough, and is capable of sufficient flexibility in its application, to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication.' "

We are constrained to hold that there was no basis in law for the findings of the Workmen's Compensation Board and it was unsupported by substantial evidence. Although disability was incurred while working, there is no basis for finding that the nature of claimant's employment was such as to produce the disease as a natural incident of his employment but rather a hazard attending the type of employment generally. The claimant offers no explanation of the happening of the incident except as quoted herein. The medical testimony was contingent, speculative and not based on any proper hypothesis.

The second issue raised by appellants concerning the right of the board to modify its decision without notice appears to be somewhat the same procedure adopted by it in the *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works* (304 N. Y. 65, *supra*) and set forth on page 70. The method is most unusual and it would appear that appellants were entitled to notice under any circumstances. It is unnecessary in view of our holding to finally determine that issue.

The decision and award of the Workmen's Compensation Board should be reversed and the claim dismissed, without costs.

Foster, P. J., Gibson and Reynolds, JJ., concur.

Decision and award of the Workmen's Compensation Board reversed, and the claim dismissed, without costs.