■ In the Matter of the Claim of CAROL RUSSO, Respondent, v HRT, INC. OF ORANGE COUNTY et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. [667 NYS2d 854] —Mercure, J. Appeal from a decision of the Workers' Compensation Board, filed January 5, 1996, which ruled that the accidental death of claimant's decedent arose out of and in the course of his employment and awarded workers' compensation benefits.

Claimant filed an application for workers' compensation benefits in connection with the March 10, 1993 shooting death of her husband, Joseph Russo (hereinafter decedent), who was at that time employed as executive vice-president of HRT, Inc. of Orange County (hereinafter HRT) at its corporate offices in the Village of Chester, Orange County. It is undisputed that Arnold Bernstein, decedent's former friend, business associate and attorney, met with decedent at his office from approximately 3:30 P.M. to 5:30 P.M. on that day. After the meeting was concluded, Bernstein left the office but waited outside for decedent. As decedent was leaving the premises at approximately 7:30 P.M., Bernstein approached him in the parking lot and shot him several times with a rifle, causing his death. Based upon claimant's hearing testimony to the effect that Bernstein was working for HRT at the time of the murder and also certain testimony given at the trial of the criminal charges against Bernstein, the Workers' Compensation Board found that Bernstein went to decedent's office on the day of the murder in connection with HRT's pending bankruptcy, thereby supporting a finding that decedent's death arose out of and in the course of his employment with HRT. The carrier appeals.

In making a determination as to the compensability of injuries sustained in an assault, the appropriate inquiry is "whether the assault originated in work-related differences or purely from personal animosity between the combatants" (*Matter of Rosen v First Manhattan Bank*, 202 AD2d 864, 865, *affd* 84 NY2d 856), a question of fact to be decided by the Board

(*see, id.*; *Matter of Privatera v Yellow Cab Co.*, 158 AD2d 835). The Board's determination in that regard "must be sustained so long as there is any nexus, however slender, between the motivation for the assault and the employment" (*Matter of Rosen v First Manhattan Bank, supra*, at 865; *see, Matter of Seymour v Rivera Appliances Corp.*, 28 NY2d 406, 409). At the same time, in order to satisfy the requirement of rationality, which the substantial evidence test provides as a means of correcting abuses in individual cases and to help assure proper administrative adjudication (*see, Matter of Kopec v Buffalo Brake Beam-Acme Steel & Malleable Iron Works*, 304 NY 65, 72), a reviewing court "will insist upon ' "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" ' " (*id.*, at 71, quoting *Consolidated Edison Co. v National Labor Relations Bd.*, 305 US 197, 229). Based upon our review of the record, we conclude that the evidence relied upon by the Board in support of its determination that decedent's accidental death arose out of and in the course of his employment did not satisfy that minimal requirement. We accordingly reverse the Board's determination and dismiss the claim.

At the hearing before the Workers' Compensation Law Judge, the testimony centered upon Bernstein's relationship to decedent and to HRT. First, claimant was asked whether Bernstein was HRT's attorney. She responded, "He worked for my husband, yes." She was then asked whether Bernstein worked for HRT as well. She answered, "I don't know. I do know that he worked for my husband and my husband only did HRT." On cross-examination, however, she acknowledged that Bernstein "was never an employee of HRT" but that he was "contracted by [decedent] to do * * * work for HRT * * * during that period". Asked to indicate "what he was contracted for", claimant merely stated that Bernstein was a real estate lawyer and (at some unspecified time in the past) had helped find the site for HRT and in fact "drew up the contract for the site". Finally, when asked the basis for her belief that Bernstein had done some contracting for the Chester site and in fact went to the office on the date of the murder to discuss HRT business, claimant identified HRT's manager and corporate secretary, James Coleman, as the source of her information.

Both Bernstein and Coleman testified at the criminal trial, and their testimony was given particular consideration by the Board. Both made it patently clear that Bernstein and decedent had terminated their personal and professional relationship prior to the 1992 formation of HRT and that Bernstein had no

connection with HRT prior to the date of the murder. In fact, their testimony established that Bernstein had never even been to the HRT offices before that day. Coleman testified that, although he had heard of Bernstein, he never met him before the date of the murder. Coleman also testified that he was called into decedent's office during the March 10, 1993 meeting with Bernstein and was requested to bring in a paper in connection with decedent's personal bankruptcy. Then, he overheard a telephone conversation between Bernstein and HRT's corporate attorney in which Bernstein communicated his refusal to sign a paper releasing decedent from liability. In his testimony, Bernstein gave an extensive narrative of his lengthy business relationship with decedent, primarily in connection with a business known as Cornwall Equities, and the claimed misdeeds and chicanery that brought that relationship to an end and initiated a period of recrimination, lawsuits, property executions, restraining notices and the like. According to Bernstein, he went to decedent's office on the date of the murder in order to put an end to a series of actions that had been commenced seven years previously and obviously had nothing to do with HRT.

In resolving the conflict between claimant's hearing testimony and all other evidence before it, the Board chose to rely upon the rankest of hearsay testimony given by an interested party who lacked any personal knowledge of the subject matter of her testimony and to reject detailed, consistent first-hand testimony given by witnesses with absolutely no motive to prevaricate. In fact, the testimony by Bernstein and Coleman was adduced at Bernstein's criminal trial, when neither had any idea of the significance of their statements concerning Bernstein's relationship to HRT. Further, on the issue of Bernstein's involvement with HRT, claimant herself relied upon and deferred to Coleman. Nonetheless, the Board chose to accept claimant's testimony and implicitly reject Coleman's. As for the Board's finding that Bernstein went to decedent's office to discuss HRT's bankruptcy, we need merely note that the clear, uncontradicted evidence indicated that the subject matter of the conversation was decedent's personal bankruptcy, a matter having no discernible connection to HRT.

Based upon the foregoing, we conclude that the Board's determination is arbitrary and should be annulled for lack of substantial evidence to support it (*see, Matter of Compo v Perales*, 76 NY2d 948; *Matter of Kopec v Buffalo Brake Beam-Acme Steel & Malleable Iron Works*, 304 NY 65, *supra; Matter of Newton v County of Erie*, 7 AD2d 29, 32). We also note that,

notwithstanding the abolition of the so-called legal residuum rule (*see, People ex rel. Vega v Smith*, 66 NY2d 130, 139), an administrative determination based entirely upon hearsay evidence will be sustained only if that hearsay is "sufficiently reliable" (*Matter of Abdur-Raheem v Mann*, 85 NY2d 113, 119; *see, Matter of Diehsner v Schenectady City School Dist.*, 152 AD2d 796, 797). In our view, the present record supports no such finding.

Mikoll, J. P., White, Yesawich Jr. and Spain, JJ., concur. Ordered that the decision is reversed, without costs, and claim dismissed.