In the Matter of MAMARONECK VILLAGE TILE DISTRIBUTORS, INC., Appellant, v WORKERS' COMPENSATION BOARD, Respondent. [893 NYS2d 641]—

Lahtinen, J.

On September 12, 2008, an investigator for the Workers' Compensation Board, Glenn Muller, inquired at Mamaroneck Village Tile Distributors, Inc. as to whether the company had workers' compensation insurance. Muller made this inquiry because an individual had filed a C-3 form claiming to have been injured while working for Mamaroneck. The company's president, Jonathan Mammana, told Muller that the company had no employees and therefore did not have workers' compensation insurance. Muller entered a rear work area, which was shared by Mamaroneck with an ironworking company, where he observed two men both wearing T-shirts with the words "Mamaroneck Village Tile" printed on them. The men were cutting stone on a wet saw. Since the men did not answer when Muller asked a question in English, Muller spoke in Spanish and one man reportedly responded in Spanish indicating that he had worked for Mamaroneck for two years. Based upon this information, a stop-work order was issued that day against Mamaroneck.

Supported by an affidavit of Mammana, sworn to September 19, 2008 asserting that Mamaroneck had no employees, the company made an application seeking redetermination review of the order (see Workers' Compensation Law § 141-a [4] [a]). A hearing was held on October 3, 2008 before a Workers' Compensation Law Judge (hereinafter WCLJ). The Uninsured Employers' Fund produced Muller to testify in support of the stop-work order. Mammana then testified for Mamaroneck. The WCLJ credited the testimony of Muller and, in a decision filed

October 10, 2008, upheld the stop-work order. Mamaroneck appeals.

Workers' Compensation Law § 141-a was enacted in 2007 to provide "the Chair additional enforcement authority against employers who do not properly provide coverage for their employees" (Minkowitz, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 141-a, 2009 Pocket Part, at 96; see L 2007, ch 6, § 12). As relevant here, the statute deems the failure of an employer to carry workers' compensation insurance to be "an immediate serious danger to public health, safety or welfare sufficient to justify service by the chair of a stop-work order" (Workers' Compensation Law § 141-a [4] [a]). Expeditious review of a stop-work order is afforded under the statute. While the precise procedures for such review are not spelled out in detail in the statute, the procedures used by the Chair in this case after receiving the timely affidavit on behalf of Mamaroneck included conducting a prompt hearing before a WCLJ at which the Uninsured Employers' Fund set forth its proof in support of the stop-work order and Mamaroneck had an opportunity to produce evidence in support of its contention that it had no employees. A decision followed without delay. These procedures accorded ample due process protection to Mamaroneck (see Mathews v Eldridge, 424 US 319, 335 [1976]; Matter of Transcontinental Refrigerated Lines v Workers' Compensation Bd., 269 AD2d 714, 716 [2000]).

Mamaroneck argues that the decision upholding the stop-work order and denying its application for redetermination was not supported by substantial evidence. Since there is no dispute that Mamaroneck did not have workers' compensation insurance, the dispositive issue narrows to whether substantial evidence supported the determination that the company had employees (see Matter of El Hassanein v Yankee Stop Corp., 64 AD3d 824 [2009], lv denied 13 NY3d 708 [2009]; Matter of Jin Liu v Tak Chan Yeung, 15 AD3d 752, 752 [2005]). Substantial evidence includes "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]; see Matter of Howell v Langie Fuel Serv., 241 AD2d 568, 570 [1997]; Matter of Manning v Niagara Mohawk Power Corp., 233 AD2d 803, 804 [1996], lv dismissed 89 NY2d 1029 [1997]).

Here, Muller testified that he saw two men in a back area of Mamaroneck's business. Those men were wearing T-shirts with Mamaroneck's name printed on them, they were cutting stone, and they were doing so with Mamaroneck's wet saw. Cutting

stone was an activity consistent with Mamaroneck's business and not with that of the other business that shared the space with Mamaroneck. When questioned by Muller in Spanish, one of the men indicated that he had worked for Mamaroneck for the previous two years. While this statement was hearsay, we note that hearsay may be considered in this type of administrative hearing (*see Matter of Gutierrez v Courtyard by Marriott*, 46 AD3d 1241, 1243 [2007]), and the hearsay was not the only evidence supporting the determination in this case (*cf. Matter of Russo v HRT, Inc. of Orange County*, 246 AD2d 933, 936 [1998], *lv denied* 91 NY2d 815 [1998]). Mammana acknowledged that the type of work he did could not always be accomplished by one person alone and, although he stated that in such circumstances he hired independent contractors, he produced no documentation or other evidence beyond his own statement supportive of such a relationship with any individuals. Accepting the WCLJ's determination that Muller's testimony was credible (*see Matter of El Hassanein v Yankee Stop Corp.*, 64 AD3d at 824), the record contains substantial evidence supporting the decision to uphold the stop-work order (*cf. Matter of Carlson v Akin*, 32 AD3d 1131, 1132 [2006]; *Matter of Davison v Holder*, 137 AD2d 899, 900 [1988]).

Mercure, J.P., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the decision is affirmed, without costs.