■ In the Matter of Kenneth G. King, Petitioner, v Thomas P. DiNapoli, as Comptroller of the State of New York, Respondent. [905 NYS2d 336]—

Garry, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which denied petitioner's applications for accidental and performance of duty disability retirement benefits.

Petitioner, a police officer, suffered a back injury in an automobile accident that occurred while he was responding to a domestic dispute in June 1995. He has not returned to work and, in 2003, petitioner applied for accidental and performance of duty disability retirement benefits based on the incident. After both applications were denied by the New York State and Local Police and Fire Retirement System, petitioner requested a hearing and redetermination. Following a hearing, at which petitioner was the only person to testify, a Hearing Officer concluded that he had failed to prove that he was permanently incapacitated from the performance of his duties and denied his

application. Respondent adopted the Hearing Officer's findings, prompting this CPLR article 78 proceeding.

As an applicant for the requested benefits, petitioner bore the burden of establishing that he was permanently incapacitated from performing the duties of a police officer (see Matter of Ragno v DiNapoli, 68 AD3d 1342, 1343 [2009]). He testified that he was incapable of wearing a bullet proof vest or gun belt, sitting in a patrol car for an extended period of time or chasing and physically apprehending suspects. He also submitted the medical records of several treating physicians, including an orthopedic surgeon who performed surgery on petitioner's back in 1999[1] and who subsequently concluded that petitioner was unable to perform many of the duties associated with police work. An independent examiner who evaluated petitioner on behalf of the Retirement System likewise asserted that petitioner was precluded from performing the full responsibilities of a police officer due to his continuing "mild, partial disabilities." Shortly thereafter, respondent sought a further evaluation by neurologist Christopher Calder. Calder reached a contrary opinion, finding no objective evidence to support a finding of permanent disability. His report and opinion were the basis for the denial of benefits.

While respondent is clearly vested with the authority to resolve the conflicting opinions of medical experts by crediting one opinion over another, this is true only " 'so long as the credited expert articulates a rational and fact-based opinion founded upon a physical examination and review of the pertinent medical records' " (id. at 1344, quoting Matter of Freund v Hevesi, 34 AD3d 950, 950 [2006]). We find that Calder's medical opinion, upon which respondent relied, was neither fact-based nor accurately premised on consideration of petitioner's medical records, but was based instead upon several factual misstatements. The record does not support Calder's conclusion that petitioner's symptoms were "more likely" caused by a combination of depression and degenerative changes than by the 1995 car accident. The sole basis for Calder's opinion that depression was a contributing factor appears to be his own speculation that petitioner "may" be depressed and that treatment for depression should be "considered." However, there is no indication in petitioner's medical records that any of the treating physicians or prior examiners suspected or diagnosed depression at any time in their course of treatment.

---

**1.** The surgical procedure performed involved a posterior and posterolateral spinal fusion at the L5-S1 level, with excision of a "significant bulge/ herniation" of the vertebral disc.

Thus, even assuming that the assessment of depression was correct, in light of the complete lack of any such history in the medical record, there is no factual basis for attributing any such depression as a cause, rather than an effect, of the objectively demonstrated physical pathology.

Calder's report further inaccurately states that petitioner was initially free of pain after his surgery. In fact, even his own account of petitioner's medical history indicates that the surgery reduced but did not eliminate the symptoms. Although petitioner advised his surgeon at his first postoperative visit that he had no "significant" back pain, he described continued, though reduced, pain at the next visit, and thereafter consistently indicated that, although the surgery had improved his symptoms, it had not eliminated them. Thus, though it is undisputed that the surgery was successful, the record nonetheless reveals his continuing disability.

A further misstatement is that petitioner refused "many" procedures that could have been helpful; petitioner testified that he opted not to receive just two procedures, epidural steroid injections and facet blocks. There is nothing in either Calder's report or any of the medical records to indicate that he did so against medical advice or otherwise unreasonably.[2] Finally, in opining that there was no objective evidence of disability, Calder was required to specifically discount even his own observation of atrophy of the left calf. In light of the claimed partial disability, this finding constituted objectively relevant medical evidence, supporting petitioner's testimony that he was both unstable and unable to run, despite his efforts to otherwise maintain his fitness by regularly walking and exercising.

As to the role, if any, of petitioner's degenerative back condition, Calder acknowledged in his report that petitioner was not being treated for back pain before the accident, that his only prior experience with back pain had occurred and been resolved in the aftermath of an earlier, unrelated accident, and that the symptoms leading to this application began immediately after the accident and have persisted ever since. It is established law that "when a preexisting dormant disease is aggravated by an accident, thereby causing a disability that did not previously exist, the accident is responsible for the ensuing disability" (*Matter of Sanchez v New York State & Local Police & Fire Retire-*

---

2. The reasons for the failure to undergo these two treatments were not developed in the record. While a portion of Calder's report indicates that petitioner's insurer refused to approve treatment at a specialized pain management facility, it is unclear whether or how this may have contributed to the failure to obtain such treatment.

*ment Sys.*, 208 AD2d 1027, 1028 [1994]; *see Matter of Tobin v Steisel*, 64 NY2d 254, 259 [1985]).

This Court is not free to substitute its assessment of the medical evidence for that of respondent, whose determinations must be upheld when they are supported by substantial evidence (*see e.g. Matter of Varriano v Hevesi*, 40 AD3d 1357, 1359 [2007], *lv denied* 9 NY3d 815 [2007]). However, substantial evidence is " 'such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact' " (*Matter of Mamaroneck Vil. Tile Distribs., Inc. v Workers' Compensation Bd.*, 68 AD3d 1423, 1424 [2009], quoting *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]; *accord Matter of King v State of New York Dept. of Correctional Servs.*, 289 AD2d 824, 825 [2001]). Medical testimony "must be viewed in light of the record as a whole and has no greater probative force than the grounds upon which it is based" (*Matter of Nopper v McCall*, 222 AD2d 884, 885 [1995]). Based upon the several factual errors set forth above and the lack of support in the medical record, we find that Calder's opinion lacks probative force. Respondent's determination is therefore annulled, as it is not supported by substantial evidence in the record (*see Matter of Lipsky v New York State Comptroller*, 56 AD3d 1101, 1103 [2008]; *Matter of Nopper v McCall*, 222 AD2d at 885; *see also Matter of Sica v New York State Employees' Retirement Sys.*, 75 AD2d 927 [1980, Mikoll, J., dissenting], *affd* 52 NY2d 941 [1981]).

Peters, J.P., Malone Jr. and Kavanagh, JJ., concur.

McCarthy, J. (dissenting). As an applicant for disability retirement benefits, petitioner bore the burden of establishing that he was permanently incapacitated from performing the duties of a police officer (*see Matter of Ragno v DiNapoli*, 68 AD3d 1342, 1343 [2009]). While he submitted testimony and medical records in an attempt to meet that burden, the New York State and Local Police and Fire Retirement System rebutted such evidence with the report of Christopher Calder, a neurologist who examined petitioner at its request and determined that there was no objective evidence to support a finding of permanent disability. In my view, Calder's opinion constituted substantial evidence to support respondent's determination.

Calder acknowledged that petitioner had persisting complaints of back pain, but noted that petitioner initially reported that he was free of any significant pain following surgery. Indeed, one month after the operation, petitioner's treating physician reported that petitioner was having an "excellent recovery."

Moreover, Calder opined that petitioner's condition would benefit from a number of reasonably safe medical treatments of which petitioner had yet to avail himself. In that regard, petitioner admitted that he had not received either epidural steroid injections or facet block injections despite recommendations from treating medical professionals that he do so. Notably, petitioner bore the burden of justifying his refusal to undergo reasonably safe recommended treatment (*see Matter of Beckley v New York State & Local Retirement Sys.*, 43 AD3d 1267, 1268 [2007]). The record is totally devoid of any such justification.

While the majority attaches significance to Calder's finding that petitioner's left calf "appears atrophic compared with the right," I note that Calder nevertheless concluded that petitioner's "ankle reflex is clearly intact, and he otherwise has extremely good muscle bulk suggesting that he is regularly using his musculature." Likewise, although no other physician suspected or diagnosed petitioner with depression, Calder's statement that petitioner might suffer from depression that contributes to his back pain was based upon information provided to him by petitioner; to wit, petitioner reported that he has had trouble sleeping since the accident and that he "has had some depression which 'comes and goes.' " Another physician also noted evidence of degenerative spondylolisthesis, lending support to Calder's conclusion that petitioner's symptoms were more likely related to degenerative changes and depression than to the subject accident.

Respondent has the authority to resolve any conflict in medical evidence by crediting the opinion of one medical expert over that of another (*see Matter of Macri v DiNapoli*, 56 AD3d 936, 937 [2008]). Moreover, if respondent's "determination is supported by substantial evidence, the fact that substantial evidence may support a contrary conclusion is not a sufficient ground upon which to reject [respondent's] determination" (*Matter of Lynn v Office of Comptroller of State of N.Y.*, 16 AD3d 935, 936 [2005]). Contrary to the majority, I do not view Calder's differing opinion as based upon "factual errors"; rather, after examining petitioner and reviewing relevant medical records, Calder simply reached a different conclusion than the other physicians who treated or examined petitioner. Inasmuch as Calder's conclusion is rational and fact-based, respondent's determination is supported by substantial evidence and I perceive no basis upon which to disturb it (*see Matter of Gatewood v DiNapoli*, 60 AD3d 1266, 1267 [2009]; *Matter of Collins v DiNapoli*, 57 AD3d 1148, 1149-1150 [2008]; *Matter of Beckley v New York State & Local Retirement Sys.*, 43 AD3d at 1268-1269).

Adjudged that the determination is annulled, without costs, petition granted and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.