*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   July 7, 2016                    522020
_____

In the Matter of PAT SICA,
                    Petitioner,

        v                                    MEMORANDUM AND JUDGMENT

THOMAS P. DiNAPOLI, as State
    Comptroller,
                    Respondent.
_____


Calendar Date:   June 2, 2016

Before:  McCarthy, J.P., Garry, Lynch, Devine and Aarons, JJ.

_____


        Donald P. Henry, White Plains, for petitioner.

        Eric T. Schneiderman, Attorney General, Albany (Kathleen M. Arnold of counsel), for respondent.

_____


Garry, J.

        Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for accidental disability retirement benefits.

        Petitioner worked as a firefighter with the City of Yonkers Fire Department for approximately 17 years.  On September 2, 2001, he was injured when he was exposed to and inhaled colorless and odorless gases — to wit, carbon monoxide and cyanogen chloride — while responding to an emergency at a supermarket. Thereafter, he filed an application for accidental disability retirement benefits based upon, among other things, this incident.  The application was denied on the ground that the incident did not constitute an accident within the meaning of

Retirement and Social Security Law § 363.  In a careful analysis, the Hearing Officer subsequently determined that the incident did constitute an accident, as "[t]he combination of unforeseeable and exigent circumstances made it virtually impossible for [petitioner] to recognize the danger."  Thereafter, respondent ultimately upheld the initial denial, and petitioner then commenced this CPLR article 78 proceeding challenging that determination.

We annul.  It is well settled that for purposes of the Retirement and Social Security Law, an accident is defined as "'a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact'" (Matter of Kenny v DiNapoli, 11 NY3d 873, 874 [2008], quoting Matter of Lichtenstein v Board of Trustees of Police Pension Fund of Police Dept. of City of N.Y., Art. II, 57 NY2d 1010, 1012 [1982]; accord Matter of Schoales v DiNapoli, 132 AD3d 1184, 1185 [2015]).  "Significantly, it must result from an activity that is not undertaken in the performance of ordinary job duties and that is not an inherent risk of such job duties" (Matter of Schultz v DiNapoli, 137 AD3d 1454, 1455 [2016] [citations omitted]; see Matter of Schoales v DiNapoli, 132 AD3d at 1185).  Petitioner bears the burden of establishing that the event producing the injury was an accident, and respondent's determination will be upheld where it is supported by substantial evidence (see Matter of Dicioccio v DiNapoli, 124 AD3d 1170, 1171 [2015]; Matter of Roth v DiNapoli, 105 AD3d 1183, 1184 [2013]).

Petitioner testified that on the day of the incident, he received a medical emergency call from a local supermarket reporting an individual experiencing difficulty with breathing.  Upon arriving at the site, petitioner was directed to the walk-in freezer located at the back of the supermarket, where he discovered two unconscious individuals — one inside the freezer and one outside the freezer.  Petitioner immediately provided cardiopulmonary resuscitation and breathing assistance to the unconscious victim inside the freezer until an ambulance crew arrived to assist.  Petitioner explained that, in the entire course of providing medical services to the victim at the scene, he never smelled, heard, or saw anything that might have indicated that chemical gases or fumes were involved in the

medical emergency.  Petitioner's testimony further reflected that, although he felt ill after helping move the victims to an ambulance, he did not learn that chemical gases were present at the scene until he himself was transported to a hospital for medical evaluation.

We have "held that exposure to toxic fumes while fighting fires is an inherent risk of a firefighter's regular duties" (Matter of Schultz v DiNapoli, 137 AD3d at 1456 [emphasis added]; see Matter of Huether v Regan, 155 AD2d 860, 861 [1989], lv denied 75 NY2d 705 [1990]; Matter of Daly v Regan, 97 AD2d 575, 576 [1983], lv denied 61 NY2d 602 [1984]).  Here, however, unlike our prior cases involving exposure to toxic gases or smoke, petitioner was not responding to a fire that presented the inherent and foreseeable risk of inhaling toxic gases (see Matter of Schultz v DiNapoli, 137 AD3d at 1456; Matter of Huether v Regan, 155 AD2d at 861) or smoke (see Matter of Daly v Regan, 97 AD2d at 576).  The record evidence further reflects that petitioner was neither aware that the air within the supermarket contained toxic chemical gases (cf. Matter of Schultz v DiNapoli, 137 AD3d at 1456 n), nor did he have any information that could reasonably have led him to anticipate, expect or foresee the precise hazard when responding to the medical emergency at the supermarket (see Matter of Murphy v New York State Comptroller, 92 AD3d 1022, 1023 [2012]; Matter of Tierney v New York State Comptroller, 90 AD3d 1215, 1215 [2011]).  The Hearing Officer made express factual findings that petitioner did not learn that chemicals had been involved in the incident until after it ended. He further found that there was no record evidence to support a conclusion that petitioner should have been aware of the odorless and invisible gas, nor that his training and experience related to chemical exposure should have prepared him to recognize its presence especially as no evidence suggested that others within the supermarket exhibited symptoms of such exposure.  Although the dissent challenges the conclusion that petitioner could not foresee the presence of the hazard, we find it highly significant that respondent in no manner contradicted the Hearing Officer's finding that petitioner neither could nor should have recognized the danger posed in the circumstances presented.

In reversing the Hearing Officer's determination, respondent instead relied upon petitioner's job description, which indicates that he was required to respond to medical emergencies and to be exposed to hazardous conditions such as fumes and toxic materials. The dissent likewise relies heavily upon petitioner's job description and training. Taken to its immediate and logical conclusion, however, this position may wholly eviscerate accidental disability retirement protection for emergency responders in rescue situations; if a broadly written job description that requires the rescue of individuals in hazardous situations is allowed to replace a factual analysis of the particular circumstances of each incident, those who put themselves in harm's way may be left without recourse. Whether an incident is so "sudden, fortuitous . . ., unexpected [and] out of the ordinary" (Matter of Kenny v DiNapoli, 11 NY3d at 874 [internal quotation marks and citation omitted]) that it qualifies as an accident within the meaning of the Retirement and Social Security Law remains a factual issue that should not be determined merely by reference to job descriptions. Otherwise, emergency personnel will be rendered ineligible for accidental disability retirement in any rescue situation, without regard to how exigent, unexpected or unforeseeable the circumstances of their injury may be. This cannot have been the Legislature's intent in establishing the accidental disability retirement program for rescue workers.

Accordingly, we find that respondent's determination that the September 2, 2001 incident did not constitute an accident within the meaning of Retirement and Social Security Law § 363 is unsupported by substantial evidence in the record before us. As the hearing and determination of respondent under review were limited to the question of whether that incident so qualified, we decline to address in the first instance petitioner's arguments regarding the presumption set forth by Retirement and Social Security Law § 363-a or the issue of causation (see generally Quintana v City of Buffalo, 114 AD3d 1222, 1223 [2014], lv denied 23 NY3d 902 [2014]).

Lynch and Aarons, JJ., concur.

McCarthy, J.P. (dissenting).

In order to annul respondent's determination, the majority necessarily finds that respondent's conclusion that petitioner suffered from "injuries [that] were the result of a risk inherent in the ordinary course of [petitioner's] duties" was not supported by substantial evidence — that a reasonable mind could not reach that conclusion based on the record evidence. We disagree with the majority's finding and, therefore, we respectfully dissent.

"This Court is not free to substitute its assessment of the . . . evidence for that of respondent, whose determinations must be upheld when they are supported by substantial evidence" (Matter of King v DiNapoli, 75 AD3d 793, 796 [2010] [citation omitted]; see Matter of Schultz v DiNapoli, 137 AD3d 1454, 1455 [2016]). Substantial evidence is "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact, and is less than a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt" (Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d 494, 499 [2011] [internal quotation marks and citation omitted]; see Matter of King v DiNapoli, 75 AD3d at 796). "The standard demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Ridge Rd. Fire Dist. v Schiano, 16 NY3d at 499 [internal quotation marks and citations omitted]).

As the Court of Appeals has made clear, in order to find that a petitioner has suffered an accident for the purposes of accidental retirement disability benefits, it is "critical" that the "precipitating accidental event" of a petitioner's injuries is "not a risk of the work performed" by him or her (Matter of McCambridge v McGuire, 62 NY2d 563, 568 [1984]; see Matter of Mirrer v Hevesi, 4 AD3d 722, 723 [2004]; Matter of Jonigan v McCall, 291 AD2d 766, 766 [2002]). Therefore, to constitute an accident, "the event must arise from risks that are not inherent to petitioner's regular employment duties" (Matter of Roberts v DiNapoli, 117 AD3d 1166, 1166 [2014]; see Matter of Walion v New York State & Local Police & Fire Retirement Sys., 118 AD3d 1215, 1216 [2014]). Finally, a petitioner bears the burden of proving

that his or her injuries were the result of an accident (see Matter of Walion v New York State & Local Police & Fire Retirement Sys., 118 AD3d at 1215). Accordingly, if the conclusion that petitioner's exposure to chemical gases arose from risks inherent in petitioner's regular employment duties is one that results from reasonable and plausible inferences from the record evidence, this Court must confirm respondent's determination.

Turning first to the record evidence regarding the scope of petitioner's regular professional duties, the record establishes that petitioner was a firefighter tasked with fighting fires and providing emergency medical assistance. The record contains the job description governing petitioner's employment, which opens with the assertion that "[t]he work is of a hazardous nature." Specifically as to petitioner's medical duties, it provides that "[a]dminist[ration of] emergency first aid treatment to injured persons" is an "ESSENTIAL FUNCTION[]" of petitioner's job. According to the same description, the environmental conditions in which petitioner was expected to work included "exposure to . . . toxic materials [and] chemicals."

The record also contains proof regarding petitioner's professional training and his use of that training. Petitioner testified that he specifically received training in providing emergency medical aid and in "chemical exposure." Moreover, his testimony established that he regularly responded to medical emergencies, and he also testified that he "may have" responded to chemical spill and chemical exposure emergencies in the past.[1] Considering the foregoing proof, uncontested evidence establishes that petitioner was informed that his professional duties included providing emergency medical assistance, that he was trained to perform emergency medical assistance and that he did, in fact, provide emergency medical assistance as a part of his job duties. Additional uncontested proof establishes that

---

[1] To the extent that petitioner provided an ambiguous answer regarding whether he had responded to chemical exposure emergencies in the past, as the party assigned the burden of proof, that ambiguity does not inure to his benefit.

petitioner was informed that his job required him to be exposed to toxic chemicals, that he was specifically trained in chemical exposure and that he "may have" actually responded to chemical exposure incidents in the past.

Turning to the question of whether petitioner was injured based upon risks inherent in fulfilling the foregoing duties, petitioner received an emergency call reporting a person experiencing trouble breathing in a supermarket. Upon arrival at that indoor location, petitioner found two unconscious persons in close proximity to one another, both exhibiting no signs of external trauma. Although unknown to petitioner at the time, those persons were in need of emergency medical assistance because they had inhaled carbon monoxide and cyanogen chloride[2] and, in providing emergency aid, petitioner was also exposed to those toxic chemicals. Accordingly, it is undisputed that petitioner was injured by the same dangerous condition that gave rise to the need for his emergency medical assistance, exposure to chemical gases.[3] Moreover, petitioner was on notice that his

---

[2]  Apparently, the two persons were supermarket employees who had been attempting to chemically clean a walk-in freezer.

[3]  We disagree with the majority's assertion that no reasonable mind could conclude that a firefighter with petitioner's training could have anticipated the possibility that there was a problem with air quality at the scene. Although the chemical gases were odorless, petitioner was on notice of a person suffering from breathing problems. He found two unconscious persons, which removed any reasonable possibility that the etiology of the medical conditions could be an internal condition unique to one of the individuals, such as a heart attack. Moreover, and considering the proper allocation of the burden of proof to petitioner, the record is bereft of any plausible explanation of a potential cause of the conditions of the two people that was not related to air quality, let alone an explanation of why those potential causes would be more likely than air quality. On its own, the fact that a reasonable mind could conclude that a person with petitioner's training could have reasonably anticipated an air quality problem is a

duties included exposing himself to such dangerous conditions by his job description, his training and his actual professional experiences. Given this record evidence, a reasonable mind could conclude that petitioner suffered injuries that were the result of the risks inherent in his regular professional duties as a firefighter and emergency medical assistance provider explicitly tasked with risking chemical exposure and specifically trained for that risk (see Matter of Schultz v DiNapoli, 137 AD3d at 1455; Matter of Purcell v DiNapoli, 81 AD3d 1069, 1070 [2011]; Matter of Pryor v Hevesi, 14 AD3d 776, 777 [2005]; Matter of Huether v Regan, 155 AD2d 860, 861 [1989], lv denied 75 NY2d 705 [1990]; Matter of Daly v Regan, 97 AD2d 575, 576 [1983], lv denied 61 NY2d 602 [1984]). Accordingly, we would affirm.

Turning to the majority's decision to the contrary, the majority departs from this Court's long-standing recognition that emergency response personnel often have inherent professional duties to confront or expose themselves to dangerous conditions and/or people (see e.g. Matter of Kelly v DiNapoli, 137 AD3d 1470, 1471-1472 [2016]; Matter of Schultz v DiNapoli, 137 AD3d 1454, 1455-1456 [2016]; Matter of Fulton v New York State Comptroller, 122 AD3d 983, 983-984 [2014], lv denied 24 NY3d 915 [2015]; Matter of Carpenter v DiNapoli 104 AD3d 1037, 1038 [2013]; Matter of Reynolds v DiNapoli, 97 AD3d 892, 893 [2012]; Matter of Jarosz v DiNapoli, 95 AD3d 1500, 1501 [2012]; Matter of Rykala v New York State Comptroller, 92 AD3d 1077, 1077 [2012]; Matter of Huether v Regan, 155 AD2d at 861; Matter of Daly v Regan, 97 AD2d at 576; but see Matter of Kelly v DiNapoli, 137 AD3d at 1472-1473 [Garry, J., dissenting]). As a direct result, this Court's jurisprudence now reaches disparate results based upon whether a firefighter inhales toxic gases while fighting a fire, in which case there is no accident (see Matter of Schultz v DiNapoli, 137 AD3d at 1456; Matter of Huether v Regan, 155 AD2d at 861; Matter of Daly v Regan, 97 AD2d at 576), or whether a firefighter inhales toxic gases while providing emergency medical

_____

sufficient basis to confirm respondent's determination (see Matter of Scofield v DiNapoli, 125 AD3d 1086, 1087 [2015]; Matter of Bleeker v New York State Comptroller, 84 AD3d 1683, 1684 [2011], lv denied 17 NY3d 709 [2011]).

assistance to people overcome by such gases, in which case there is an accident.  Because firefighters who also provide emergency medical assistance will generally — as is the case here — have equivalent duties to risk exposure to chemical gases while fighting fires as while providing emergency medical assistance, the majority's distinction is arbitrary.

More generally, we reject the majority's conclusion that respondent could not reasonably rely on the combined proof of petitioner's job description and his relevant training to reach the conclusion that his injuries from exposure to chemical gases resulted from risks inherent in the ordinary course of his duties.  It is difficult to imagine proof that is more probative in establishing a petitioner's inherent professional duties than his or her actual job description.  Moreover, an employer's devotion of time and resources to training an employee as to a particular professional risk provides a clear indication of an employer's actual expectations regarding the employee's duties. Our deferential standard of review in cases such as this means little if, in reality, this Court will replace respondent's judgment with its own even when respondent relies on strong objective evidence not subject to hindsight bias in determining the scope of a petitioner's duties.

Devine, J., concurs.


ADJUDGED that the determination is annulled, without costs, and matter remitted to respondent for further proceedings not inconsistent with this Court's decision.




ENTER:

Robert D. Mayberger
Clerk of the Court