In the Matter of PATRICK RAWSON, Petitioner, v THOMAS P. DiNAPOLI, as State Comptroller, et al., Respondents. [55 NYS3d 799]—

Lynch, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller denying petitioner's application for accidental and performance of duty disability retirement benefits.

Petitioner was employed as a police officer for the City of Watertown Police Department. On March 19, 2009, he was struck under the jaw by a suspect he was escorting to the emergency room and his head was suddenly thrust backwards. As a result, he was diagnosed with a concussion and experienced neck pain, persistent headaches, vision difficulties, memory loss and various other related ailments. He was out of work until September 2009 when he returned to light duty. In July 2010, after he returned to regular duty, he responded to a call involving a bar fight. He had no recollection of the event for seven or eight hours, experienced an exacerbation or recurrence of his prior symptoms and stopped working completely. Petitioner, through the City's Chief of Police, subsequently filed applications for accidental and performance of duty disability retirement benefits. These applications were denied. Following a hearing, a Hearing Officer upheld the denials, finding that petitioner was not permanently incapacitated from performing his duties as a result of the March 19, 2009 incident. Respondent Comptroller agreed and this CPLR article 78 proceeding ensued.

Initially, it is well settled that an applicant for accidental and performance of duty disability retirement benefits bears the burden of demonstrating that he or she is permanently incapacitated from performing his or her job duties (*see Matter of Del Peschio v DiNapoli*, 139 AD3d 1298, 1299 [2016]; *Matter of Guadagnolo v DiNapoli*, 128 AD3d 1246, 1247 [2015]). Moreover, where medical experts provide conflicting opinions on the issue of permanent incapacity, the Comptroller is vested with the authority to credit the opinion of one expert over the other, provided that the credited expert "articulates a rational and fact-based opinion founded upon a physical examination and review of the pertinent medical records" (*Matter of Mulvaney v DiNapoli*, 92 AD3d 1021, 1021 [2012]; *see Matter of Cantelmo v New York State Comptroller*, 105 AD3d 1306, 1307-1308 [2013]).

Here, petitioner described the many medical problems he

experienced following the March 19, 2009 incident, including neck pain, headaches, vision difficulties, memory loss and anxiety, which are continuing and impact his ability to perform police work. Claudine Ward, petitioner's treating physician who specializes in concussion-related injuries, testified that such symptoms are the result of post-concussion syndrome and are permanent in nature rendering petitioner incapable of performing his regular duties as a police officer. Patrick Hughes, a neurologist who conducted an independent medical examination of petitioner on behalf of respondent New York State and Local Employees' Retirement System, acknowledged that petitioner had previously exhibited symptoms indicative of post-concussion syndrome, noting that they were difficult to measure objectively and were largely based on petitioner's subjective complaints. In his view, petitioner's post-concussion syndrome had resolved by the time of his examination in April 2013, and he opined that petitioner was not permanently incapacitated from performing his duties as a police officer.

On cross-examination, however, Hughes acknowledged that petitioner complained of a number of post-concussion symptoms during his examination and he believed that petitioner was being truthful. When asked if these symptoms would preclude petitioner from performing the specific duties of a police officer, Hughes initially explained that he confined his opinion to "whether [petitioner's] neck injury and post-concussion syndrome caused by the accident of 3/19/09 resulted in a permanent disability." Nonetheless, he subsequently confirmed that petitioner's symptoms could impede his ability to use a firearm, carry out complicated directions and perform other police-related tasks. Ultimately, Hughes agreed that petitioner suffered "an exacerbation or recurrence" of his post-concussion symptoms in July 2010, that would disable him from performing the duties of a police officer.

In our view, Hughes' inconsistent testimony on the issue of permanent incapacity and failure to account for the July 2010 incident in rendering his opinion does not constitute a rational and fact-based opinion necessary to support the finding that petitioner was not permanently incapacitated from performing his duties as a police officer. To the contrary, the record contains ample medical evidence and documentation, most significantly Ward's testimony, establishing that petitioner was permanently incapacitated by injuries sustained as a result of the March 19, 2009 incident that were later exacerbated in July 2010. Accordingly, inasmuch as we find that the Comptroller's determination is not supported by substantial evidence, it must be an-

nulled and the matter remitted for further proceedings (*see Matter of Cook v New York State Comptroller*, 135 AD3d 1117, 1119 [2016]; *Matter of King v DiNapoli*, 75 AD3d 793, 796 [2010]).

McCarthy, J.P., Egan Jr., Devine and Clark, JJ., concur. Adjudged that the determination is annulled, without costs, petition granted and matter remitted to respondent Comptroller for further proceedings not inconsistent with this Court's decision.